UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------x
ADAM J. and TINIE H. FILIPOWSKI,

                                    Plaintiffs,

                   - against -

VILLAGE OF GREENWOOD LAKE,

                                  Defendant.
---------------------------------------------------------------------x

**OPINION AND ORDER**

No. 10-CV-1753 (CS)

Appearances:
Michael H. Sussman
Sussman & Watkins
Goshen, New York
*Counsel for Plaintiffs*

Terry Rice
Rice & Amon
Suffern, New York
*Counsel for Defendant*

Seibel, J.

     Before the Court is Defendant's Motion to Dismiss Plaintiff's First Amended Complaint.

(Doc. 22.)  Defendant moves to dismiss both on ripeness grounds pursuant to Fed. R. Civ. P.

12(b)(1) and for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).  Because Plaintiffs'

claims are not ripe, there is no subject matter jurisdiction, and Defendant's Motion to Dismiss is

GRANTED.

**I.  BACKGROUND**

     For purposes of Defendant's Motion, I accept as true the facts, but not the legal

conclusions, as set forth in Plaintiff's First Amended Complaint ("FAC").  (Doc. 15.)

Since 1989, Plaintiffs have owned a 9.2 acre parcel[1] of residentially-zoned property in the Village of Greenwood Lake.  (FAC ¶ 4.)  As of 1998, the parcel was subject to a three-acre minimum lot size requirement, a prohibition of construction of two-family homes, and a 25% slope restriction.[2]  (*Id.* ¶¶ 5-6.)  In late 2003, Plaintiffs received sketch plan approval for a proposed three-lot subdivision of the parcel.  (*Id.* ¶ 7.)  In late 2004, however, in connection with the proposed subdivision, the Village's Zoning Board of Appeals ("ZBA") denied Plaintiffs' application for variances from both the minimum lot size requirement and the Steep Slope Law.  (*See id.* ¶ 8; *Filipowski v. Zoning Bd. of Appeals of Greenwood Lake* (*Filipowski I*), 832 N.Y.S.2d 578, 580-81 (2d Dep't 2007).)  Plaintiffs challenged the ZBA's denial in New York Supreme Court, which upheld the ZBA's decision.  (FAC ¶ 11.)  On appeal, the Appellate Division reversed in part, ordering the ZBA to grant a variance from the minimum lot size requirement for one of the three proposed lots.  (*Id.* ¶ 12; *see Filipowski I*, 832 N.Y.S.2d at 581.)

After *Filipowski I*, Plaintiffs returned first to the Village Planning Board, and later to the ZBA, seeking approval for a two-lot subdivision.  (FAC ¶¶ 13-14.)  In the meantime, the Village had amended its Steep Slope Law to reduce the maximum slope to 15%.  (*Id.* ¶ 15.)  The ZBA denied Plaintiffs' requested variance from the new Steep Slope Law for the proposed two-lot subdivision, and also indicated for the first time that Plaintiffs' parcel lacked road frontage, implying that no construction would be possible.  (*See id.* ¶¶ 16-17.)

The New York Supreme Court dismissed Plaintiffs' Article 78 challenge to this second ZBA denial on *res judicata* and collateral estoppel grounds.  (*See* Rice Decl. ¶ 38; Lipman Decl.

---

[1] Plaintiffs' initial Complaint identified the parcel as 8.1 acres.  (Complaint, (Doc. 1), ¶ 4.)

[2] As of 1998, the Village Code's "Steep Slope Law" prohibited development "on steep slopes in excess of 25%," and also provided that "[o]nly 50% of the land area of that portion of each lot may be counted as part of any lot area if subject to the following:  (a) [f]or residentially zoned properties, slopes over 25%."  (Declaration of Terry Rice ("Rice Decl."), (Doc. 23), ¶ 23.)  The Steep Slope Law has since been amended to reduce the maximum slope to 15%.  *See* Vill. of Greenwood Lake, N.Y., Code § 120-18(C).

¶¶ 11-12; *Filipowski v. Zoning Bd. of Appeals of Greenwood Lake* (*Filipowski II*), 909 N.Y.S.2d 530, 531 (2d Dep't 2010).)[3]  The Appellate Division reversed and remanded to the Supreme Court for a determination on the merits.  (*See* Rice Decl. ¶ 39; Lipman Decl. ¶ 13; *Filipowski II*, 909 N.Y.S.2d at 531.)  On remand, the Supreme Court considered Plaintiffs' standing, found that they owned half of the paper street (Louise Lane) on which they contend their property borders, (*see* FAC ¶ 18), and directed the ZBA both to consider in the first instance whether that ownership interest is sufficient to grant the requested area variance, and to give *de novo* consideration to Plaintiffs' application for the proposed two-lot subdivision, (*see* Rice Decl. ¶¶ 42-44; *id.* Ex. M; Lipman Decl. ¶¶ 16-18).

Plaintiffs appealed and moved for reargument.  (Rice Decl. ¶ 45; Lipman Decl. ¶ 19.) Upon the granted reargument, the Supreme Court adhered to its original decision in large part, but directed that Plaintiffs need not apply for an area variance with respect to one of their proposed lots, because that proposed lot was substantially the same as the lot addressed by the Appellate Division in *Filipowski I*.  (*See* Rice Decl. ¶ 45; *id.* Ex. N; Lipman Decl. ¶ 19.) Plaintiffs perfected their appeal and were scheduled for oral argument before the Appellate Division on September 15, 2012.  (*See* Rice Decl. ¶ 45; Lipman Decl. ¶ 19.)  Plaintiffs apparently have not returned to the ZBA with respect to their application for a two-lot subdivision or otherwise pursued their remand.  (*See* Rice Decl. ¶¶ 46-47; Lipman Decl. ¶¶ 20-21.)

Before this Court, Plaintiffs allege that the Steep Slope Law and the ZBA's determination that their parcel lacks road frontage "effectively prohibited [them] from using their parcel for [*sic*, any] purpose," (*id.* ¶ 20), and that the Village's enforcement of its zoning laws against them

---

[3] "Lipman Decl." refers to the Declaration of Alan S. Lipman.  (Doc. 24.)

violates their constitutional right to equal protection, (*id.* ¶¶ 22-27, 32).  They therefore seek redress pursuant to 42 U.S.C. § 1983.  (*Id.* ¶ 32.)

Plaintiffs initiated this action by filing a Complaint on March 5, 2010.  (Doc. 1.)  In the Complaint, Plaintiffs alleged violations of the Takings Clause, the Due Process Clause, and the Equal Protection Clause of the U.S. Constitution.  (Complaint ¶¶ 32-34.)  After receiving leave to do so, (*see* Minute Entry dated June 21, 2010), Defendant moved to dismiss the Complaint, (Doc. 8).  On August 5, 2011, I rendered an oral decision on Defendant's first Motion to Dismiss.  (Minute Entry dated August 5, 2011.)  I first addressed whether Plaintiffs' claims were ripe; deciding that they were not, I dismissed all of Plaintiffs' claims (with leave to replead).  (*See* Tr. 8.)[4]  I then proceeded to address substantive issues with the Complaint that Plaintiffs would need to address in the event they chose to amend.  Specifically, I advised Plaintiffs that, if I had subject matter jurisdiction, I nevertheless would have dismissed all of Plaintiffs' claims for failure to state a claim.  (*See id.* at 9-21.)

Plaintiffs filed the FAC on September 13, 2011.  (Doc. 15.)  In it, Plaintiffs allege only a violation of the Equal Protection Clause.  (FAC ¶ 32.)  At a conference held on January 25, 2012, the parties and I discussed the status of the state court proceedings; I later ordered the parties to mediation, (Doc. 17).  The parties returned on July 23, 2012, at which I point I set a briefing schedule for the instant Motion.  I have received no request for a second leave to amend, nor am I aware of any developments in or the present status of the state court proceedings beyond what is set forth above.

---

[4] "Tr." refers to the Transcript of the August 5, 2011 Court Conference.  (Doc. 30.)

## II.  DISCUSSION

A.  Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1)

"A federal court has subject matter jurisdiction over a cause of action only when it 'has authority to adjudicate the cause' pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (quoting *Sinochem Int'l Co. v. Malay Int'l Shipping Corp.*, 549 U.S. 422, 425 (2007)), *rev'd en banc on other grounds*, 585 F.3d 559 (2d Cir. 2009).  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is 'properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it.'"  *Id.* (citation omitted) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination."  *Id.* (citations and internal quotation marks omitted). "[T]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."  *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (alteration in original) (citations and internal quotation marks omitted), *aff'd on other grounds*, 130 S. Ct. 2869 (2010).  An argument that a claim is not ripe for adjudication is a challenge to subject matter jurisdiction appropriately raised via Rule 12(b)(1).  *See Singer v. Xipto Inc.*, 852 F. Supp. 2d 416, 422 (S.D.N.Y. 2012) (citing *Auerbach v. Bd. of Educ.*, 136 F.3d 104, 108-09 (2d Cir. 1998)).

B. Ripeness

Ripeness is a jurisdictional inquiry that is antecedent to the Court's ability to hear claims. *See Vandor, Inc. v. Militello*, 301 F.3d 37, 38 (2d Cir. 2002). "The purpose of the ripeness requirement is to ensure that a dispute has generated injury significant enough to satisfy the case or controversy requirement of Article III of the U.S. Constitution." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 90 (2d Cir. 2002). Before any land use dispute – whether an equal protection claim or otherwise – is ripe for review, Plaintiffs must satisfy the finality requirement of ripeness. *See Lost Trail LLC v. Town of Weston*, 289 F. App'x 443, 444 (2d Cir. 2008) (summary order); *Dougherty*, 282 F.3d at 88-89. Finality means that the "government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue." *Williamson Cnty. Regional Planning Comm'n v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). In the land use context, federal court review is generally conditioned on there being a decision on "at least one meaningful application for a variance," *see Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 348 (2d Cir. 2005) (citing, *inter alia*, *Williamson*, 473 U.S. at 190), such that a landowner has a "final, definitive position from local authorities as to how their property may be used," *id.* at 352. A landowner need not apply for a variance, however, if doing so would be futile – that is, if the locality has "dug in its heels and made clear that all such applications will be denied." *See id.* at 349.

In my oral ruling on Defendant's first Motion to Dismiss, I held that Plaintiffs' claims were not ripe. Plaintiffs based their ripeness arguments then, as they do now, on "the ZBA's statement in rejecting their second proposal that the property is not eligible for variances because it lacks road frontage." (Tr. 6.) I pointed out that N.Y. Village Law § 7-736(3) "provides two

avenues of relief for this failing which [P]laintiffs have not pursued,"[5] and that therefore the ripeness question reduced to "whether the two proposals [P]laintiffs have pursued, both of which were rejected, are sufficient to establish a final decision by the [D]efendant." (*Id.*)  I compared *MacDonald, Sommer & Frates v. Yolo Cnty.*, 477 U.S. 340, 351-53 (1986) – in which the U.S. Supreme Court held that a claim based on the denial of only one development proposal for a 159-lot subdivision was not ripe – with *Palazzolo v. Rhode Island*, 533 U.S. 606, 619-21 (2001) – in which the U.S. Supreme Court held that a claim based on the denial of two development proposals (the first for all, and the second for some, of eighteen acres of wetlands) was ripe because the "reviewing body made clear that based on their interpretation of the wetlands-protecting statutes, all development was prohibited regardless of scope" and "further applications were not necessary to establish that point."  (Tr. 7-8.)  I found that Plaintiffs' case was somewhere in between, in that although Plaintiffs submitted more than one proposed plan, "they ha[d] not pointed to anything the ZBA has said, indicat[ing] that it will not give variances from the [S]teep [S]lope [L]aw under any circumstances" as was the case in *Palazzolo*.  (*Id.* at 8.)  I further noted that Plaintiffs had not even "pleaded that a variance from the [S]teep [S]lope [L]aw would be necessary for a single residence or for any possible configuration of two residences." (*Id.*)  I therefore dismissed the case on ripeness grounds because, based on the initial Complaint, I could not say "that the ZBA ha[d] dug in its heels or ha[d] definitely stated its position."  (*Id.*)

---

[5] Section 7-736 of New York's Village Law prohibits issuance of a "permit for the erection of any building . . . unless a street or highway giving access to such proposed structure has been duly placed on the official map or plan, or if there be no official map or plan, unless such street or highway is (a) an existing state, county, town or village highway," or is otherwise depicted on an approved subdivision plat or a subdivision plat filed prior to the appointment of a planning board.  *See* N.Y. Village Law § 7-736(2).  The two avenues for relief that the statute contemplates are appeals for "(a) an exception if the circumstances of the case do not require the structure to be related to existing or proposed streets or highways, and/or (b) an area variance pursuant to section 7-712-b of this chapter."  *Id.* § 7-736(3).

In their FAC, Plaintiffs have added the following new allegations, absent from the initial Complaint, and arguably relevant to the ripeness inquiry:

> 9.      In denying [the two variance] requests, ZBA members, who continue to sit on that Board, expressed the view that plaintiffs should not be permitted to develop their property in any manner and should, instead, sell their property to the Appalachian Trail.
>
> 10.     One influential Board member, former Orange County Family Court Judge Ludmerer stated, "And it says all over it, throughout that Comprehensive Plan that this land should not be built on . . . " [Meeting of September 16, 2004]
>
> *       *       *
>
> 18.     This finding [of lack of road frontage] contravened the ZBA's prior determination that plaintiffs had frontage on Louise Lane, a paper road which had previously been mapped and excavated and appeared on a filed map of the property dating to 1960 and for [sic] which was, thereafter, under state law, the subject of a continuing offer of dedication to the Village.
>
> *       *       *
>
> 21.     By selectively rejecting plaintiffs' requests for a variance from the steep slopes ordinance and by then claiming that plaintiffs lacked any road frontage, defendant, through its agents, has dug in its heels and made plain that it will take any steps necessary to disallow any development of plaintiffs' parcel.

(FAC ¶¶ 9-10, 18, 21 (second alteration in original); *see also id.* ¶ 16 (newly alleging that the amendment to the Steep Slope Law prohibits Plaintiffs' use of the property "because the access driveway planned had slopes between 15-25%").)  These new allegations, however, alone or taken together, do not persuade me to deviate from my previous ruling that Plaintiffs' claims are unripe.

Plaintiffs rely only on their two applications for variance and the ZBA's indication of lack of road frontage.  (*See* Ps' Mem. 8 ("Given that plaintiffs in the present matter have made

two applications and suffered two ZBA rejections, they meet the first ripeness prong as established in *Williamson*, particularly since the ZBA has now ruled that they have no road frontage, a necessary condition for <u>any</u> further development proposal, whatever the density.") (emphasis in original); *id.* at 10 ("Absent recognition of road frontage, the Filipowskis cannot advance any use of their property and the relevant village agency has taken final agency action on any proposed use of the parcel."); *id.* at 11 ("[I]n light of its last ruling, the ZBA has foreclosed any potential use for the plaintiffs' property . . . .").)[6] I considered both the road frontage statement and Plaintiffs' two applications in my previous ruling and found them to be insufficient to establish that Plaintiffs' claims are ripe. I adhere to my prior ruling; indeed, it is law of the case. *See, e.g.*, *Liona Corp. v. PCH Assocs. (In re PCH Assocs.)*, 949 F.2d 585, 592 (2d Cir. 1991) ("Under the law of the case doctrine, a decision on an issue of law made at one stage of a case becomes binding precedent to be followed in subsequent stages of the same litigation."). Only if the facts themselves (as opposed to how they are articulated) have changed would a different result be warranted, but the record is clear that essentially nothing has happened since my previous ruling in terms of Section 7-736 or a configuration that would not require a variance.

Nor do the new allegations solve the problem. First, merely stating that the Defendant's actions make clear that it has "dug in its heels," (*id.* ¶ 21), is a legal conclusion, not a factual allegation, and thus does not affect the ripeness inquiry. *See E. End Eruv Ass'n v. Vill. of Westhampton Beach*, 828 F. Supp. 2d 526, 536 (E.D.N.Y. 2011) ("[C]onclusory or unsupported allegations of futility will not suffice."). Second, that the ZBA's road frontage determination may be incorrect, in that it is contradicted by a map of the property dating to 1960, does nothing

---

[6] "Ps' Mem." refers to "Plaintiff's [*sic*] Memorandum of Law in Opposition to Defendant's Motion to Dismiss." (Doc. 26.)

to obviate the fact that Plaintiffs have apparently not made even one attempt to straighten out the road issue, either via Section 7-736, as I invited in my previous ruling, (Tr. 6), or via the *de novo* ZBA review authorized by the state court,[7] (*see* Rice Decl. Exs. M, N).[8]  Third, that current members of the ZBA have expressed views that Plaintiffs should not be permitted to develop their property, (FAC ¶ 9), and that one Board member made a statement about a "Comprehensive Plan" (whatever that is) to the effect that "this land should not be built on," (*id.* ¶ 10), do not make it plausible that the ZBA itself has dug in its heels sufficient to ripen Plaintiffs' claim. Assuming the truth of these allegations, the predisposition of one or two ZBA members to not grant a variance does not plausibly lead to the conclusion that the ZBA itself will not grant variances under any circumstances.  *See Congregation Rabbinical Coll. of Tartikov, Inc. v. Vill. of Pomona*, No. 07-CV-6304, 2013 WL 66473, at *23 (S.D.N.Y. Jan. 4, 2013) (hostile comments by some local officials not enough to invoke futility exception because "these individuals are not the only Village officials who would consider a formal application, if it were ever made" and the "fate of any formal proposal therefore remains an unanswered question"); *Kowalczyk v. Barbarite*, No. 08-CV-6992, 2012 WL 4490733, at *9 (S.D.N.Y. Sept. 25, 2012) ("Hostility alone, while perhaps unjustifiable, does not make certain that a zoning variance would be opposed or rejected.") (collecting cases).  Indeed, Plaintiffs do not even argue as much in their brief.  (*See* Ps' Mem. 7-11.)

Because Plaintiffs' claim is not ripe, the case is dismissed for lack of subject matter jurisdiction.

---

[7] Plaintiffs are of course under no obligation to forego their appeal of the state court ruling and instead return to the ZBA, but their choice may affect whether their federal claim is ripe.

[8] The argument that the ZBA has "dug in its heels" notwithstanding, the record gives one no reason to believe that the ZBA would flout the state Supreme Court's order that it reconsider the two-lot proposal *de novo* in light of the court's findings regarding Louise Lane.

C. Equal Protection Claim

Even if I were to find Plaintiffs' claim to be ripe, I would still dismiss the FAC for failure

to state an equal protection claim.

1. Rule 12(b)(6) Motion to Dismiss Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do." *Twombly*, 550 U.S. at 555 (alteration, citations, and internal quotation marks

omitted). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure

from the hyper-technical, code-pleading regime of a prior era, . . . it does not unlock the doors of

discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (alteration omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

    2.  <u>Application to Plaintiffs' Equal Protection Claim</u>

       Courts have recognized that the Equal Protection Clause of the Fourteenth Amendment protects not only members of a suspect class, but also individuals "who allege no specific class membership but are nonetheless subjected to invidious discrimination at the hands of government officials." *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (citing *LeClair v. Saunders*, 627 F.2d 606, 608-10 (2d Cir. 1980)).  The FAC, just like the initial Complaint, does not expressly state whether Plaintiffs are asserting a "class of one" claim or a selective enforcement claim, both of which may be applicable in the absence of allegations that Plaintiffs belong to a protected class. *See Missere v. Gross*, 826 F. Supp. 2d 542, 560 (S.D.N.Y. 2011).  Nevertheless, the FAC as a whole makes clear that Plaintiffs are pleading a "class of one" claim.  They do not allege "that they were treated differently based on impermissible considerations, such as membership in a protected class or to punish plaintiffs for exercising a constitutional right." *Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011); *see Harlen Assocs.*, 273 F.3d at 499.  Rather, Plaintiffs are clearly alleging that they were singled out either with no rational basis or, if anything, because of personal animus, both hallmarks of a "class of one" claim. *See Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).

       For a "class of one" claim, a plaintiff must plausibly plead that

> (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 60 (2d Cir. 2010) (internal quotation marks

omitted).  "[A]n extremely high degree of similarity" is required, *id.* at 59 (internal quotation

marks omitted) – a plaintiff must allege that he or she was "differently treated than someone who

is *prima facie* identical in all relevant respects," *Neilson*, 409 F.3d at 104 (internal quotation

marks omitted) – because the similarity "is offered to provide an inference that the plaintiff was

intentionally singled out for reasons that so lack any reasonable nexus with a legitimate

governmental policy that an improper purpose – whether personal or otherwise – is all but

certain," *id.* at 105 (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 565 (2000) (per curiam));

*see Fortress Bible Church v. Feiner*, 694 F.3d 208, 222 (2d Cir. 2012) ("The purpose of

requiring sufficient similarity is to make sure that no legitimate factor could explain the disparate

treatment.").  In other words, the properties and circumstances being compared must be "so

similar that differential treatment with regard to them cannot be explained by anything other than

discrimination."  *Fortress Bible Church*, 694 F.3d at 223.

   Plaintiffs have identified ten comparators who allegedly were granted building permits or

who allegedly built without variances from the Steep Slope Law despite having slopes greater

than 25%.  (*See* FAC ¶ 22.)  But Plaintiffs have failed to allege other facts sufficient to plausibly

suggest the requisite extremely high degree of similarity.  They say nothing about the structure

built; the zoning of the lot or the bulk area requirement to which it was subject;[9] whether, if only

50% of the land area of the lot is counted (because the lot contains steep slopes), the remaining

lot size was permissible for building without a variance; or if any building occurred on a steep

---

[9] Apparently, the Village of Greenwood Lake provides for four different residential zones – R-20, R(W)-20, R-40, and R-120 – with various bulk requirements, including different minimum lot sizes.  *See* Vill. of Greenwood Lake, N.Y., Code § 120-12.

slope.[10]  There is no way to tell if the properties or proposals were in any way "*prima facie*

identical in all relevant respects," *Neilson*, 409 F.3d at 104 (internal quotation marks omitted), as

is required for a "class of one" claim.  While Plaintiffs' property is about nine acres, (FAC ¶ 4),

all but one of the comparator properties are less than one acre, while one is, cryptically, "larger

than one acre," (*id.* ¶ 29).  And, while Plaintiffs are seeking to develop vacant land, the FAC is

silent as to the nature of the permits granted to or structures built by the alleged comparators.

For example, new construction of residences on vacant property may be similar, but home

extensions, pools, or decks may not.[11]  Plaintiffs do not allege that any of the other parcels had,

after application of the Steep Slope Law, lot sizes necessitating a variance, as Plaintiffs' property

requires.  Indeed, without knowing what zone those other parcels are in, and what the minimum

lot size in those zones is, the Court is unable to assess whether a variance was plausibly needed

at all.  If those owners built as of right, their construction reflects nothing about Defendant's

enforcement of its Building Code.[12]  And, assuming they needed a variance, without knowing

what they were planning to build, the character of the neighborhood, or other details about the

property, the Court can hardly tell if any variance the comparators received is at all comparable

to what Plaintiffs were seeking.

      In other words, the FAC fails to identify salient characteristics of the alleged comparators

that are necessary to plausibly allege that "no rational person could regard the circumstances of

---

[10] *See* Vill. of Greenwood Lake, N.Y., Code § 120-18(C)(1) ("Only 50% of the land area of that portion of each lot may be counted as part of any lot area if subject to [slopes over 15%]."); *id.* § 120-18(C)(2) ("No development shall be permitted on steep slopes in excess of 15%.").  Thus, the presence of steep slopes on land does not prevent building or require a variance unless the subtraction of 50% brings the lot below the minimum lot size requirement, or if the development is to occur on the sloped land.

[11] Given the lot sizes, it does not appear that the comparators (except perhaps one) built multiple residences, as Plaintiffs wish to do.

[12] Indeed, the FAC alleges that Defendant issued building permits to the comparators, but it does not allege that the owners needed a steep-slope variance before such issuance would be proper, let alone that Defendant granted to those owners a variance that had been denied Plaintiffs.  (*See* FAC ¶ 22.)

the [P]laintiff[s] to differ from those of [the] comparator[s] to a degree that would justify the differential treatment on the basis of a legitimate government policy." *Ruston*, 610 F.3d at 60 (internal quotation marks omitted).  Thus, Plaintiffs have not met their *Iqbal/Twombly* burden to "nudge[] their claim[] across the line from conceivable to plausible," *Twombly*, 550 U.S. at 570; *see Iqbal*, 556 U.S. at 679 (facts showing mere possibility of misconduct are insufficient).[13]

Accordingly, even if I were to find Plaintiffs' claims ripe, and I do not, I would nevertheless dismiss the FAC for failure to state an equal protection claim.

D.  Leave To Amend

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  It is "within the sound discretion of the district court to grant or deny leave to amend."  *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).  "Leave to amend, though liberally granted, may properly be denied for:  'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'"  *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiffs amended their pleading once, after I rendered an oral decision on Defendant's first Motion to Dismiss in which I identified deficiencies in the initial Complaint, both as to ripeness and as to the merits of their claims.  Plaintiffs' failure to fix deficiencies in their previous pleading alone, after being provided full notice of the deficiencies, is sufficient ground to deny leave to amend *sua sponte*.  *See In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp.

---

[13] Even if Plaintiffs were alleging a "selective enforcement" claim, to which some courts in this Circuit have applied a lesser standard of similarity – namely, that the comparators be only "similarly situated in all material respects"), *see Viteritti v. Inc. Vill. of Bayville*, No. 10-CV-3283, 2013 WL 145811, at *8 (E.D.N.Y. Jan. 14, 2013); *see also Mosdos Chofetz Chaim*, 815 F. Supp. 2d at 696 (collecting cases) – for similar reasons, I would still find that Plaintiffs have failed to plausibly allege that similarity.

2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (internal quotation marks omitted); *see also Ruotolo*, 514 F.3d at 191 (affirming denial of leave to amend "given the previous opportunities to amend"). Further, Plaintiffs have not requested leave to file a Second Amended Complaint or suggested that they are in possession of facts that would cure the deficiencies identified in this opinion (and my previous decision). Indeed, their failure to include additional facts in the FAC sufficient to address ripeness or the equal protection claim, after the issues were identified in my previous ruling, suggests they are not in possession of any such facts. Accordingly, I decline to grant Plaintiffs leave to amend *sua sponte*. *See, e.g.*, *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (no error in failing to grant leave to amend where it was not sought); *Walton v. Morgan Stanley & Co.*, 623 F.2d 796, 799 n.7 (2d Cir. 1980) ("[A]ppellants never sought leave to amend their complaint either in the district court or as an alternative form of relief in this court after [appellee] raised the issue of the sufficiency of appellants' complaint. Accordingly, we see no reason to grant such leave *sua sponte*.").

*        *        *

Federal courts must be wary "about transforming run-of-the-mill zoning cases into cases of constitutional right." *Olech*, 528 U.S at 566 (Breyer, J., concurring); *see Gardner v. City of*

*Balt. Mayor*, 969 F.2d 63, 68 (4th Cir. 1992) ("[F]ederal courts should be extremely reluctant to upset the delicate political balance at play in local land-use disputes."). Courts implement that principle by, for example, "imposing a strict ripeness requirement," *Tahoe-Sierra Pres. Council, Inc. v. Tahoe Reg'l Planning Agency*, 535 U.S. 302, 339 (2002) (citing *Palazzolo*, 533 U.S. at 620-21), and by requiring an "added factor," something more than a mere "faulty zoning decision," before finding constitutional violations, *Olech*, 528 U.S. at 565-66 (Breyer, J., concurring). Plaintiffs' claim here is unripe for review, and even if it were, they fail to plausibly allege that "added factor." Accordingly, Plaintiffs case must be dismissed.

## III.  CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the pending motion, (Doc. 22), and close the case.

**SO ORDERED.**

Dated: July 3, 2013
         White Plains, New York

_____
         CATHY SEIBEL, U.S.D.J.